UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENALDO CELESTIN,

               Petitioner,

     -against-

THOMAS DECKER, in his official capacity as
Field Office Director of the Immigration and
Customs Enforcement ("ICE") New York City
Field Office; DIANE MCCONNELL, in her
official capacity as Assistant Field Office
Director for the ICE New York City Field
Office; U.S. DEPARTMENT OF
HOMELAND SECURITY ("DHS"); JOHN F.
KELLY, in his official capacity as Secretary of
DHS; JEFFERSON BEAUREGARD
SESSIONS III, in his official capacity as the
Attorney General of the United States; ERIC
TAYLOR, in his official capacity as Director
of Hudson County Correctional Facility,

               Respondents.

Civil Action No.

**PETITION FOR
WRIT OF HABEAS CORPUS
<u>PURSUANT TO 28 U.S.C. § 2241</u>**

## <u>PRELIMINARY STATEMENT</u>

1.     Petitioner, Renaldo Celestin, challenges his detention by Respondents without a bond

hearing on the grounds that it violates the Immigration and Nationality Act and the Due Process

Clause of the Fifth Amendment to the U.S. Constitution.  Mr. Celestin has been held in the

custody of Immigration and Customs Enforcement without an individualized bond hearing

continuously since October 26, 2016.  At his hearing in Immigration Court today, April 4, 2017,

Mr. Celestin filed an application for Asylum, Withholding of Removal, and protection under the

United Nations Convention Against Torture with the Immigration Court and requested that a

merits hearing be scheduled.  Mr. Celestin's case was set for a merits hearing on June 16, 2017.

1

By the time of Mr. Celestin's merits hearing, he will have been detained without an individualized bond determination at minimum for 233 days.  He therefore seeks a writ of habeas corpus ordering Respondents to release him or provide him with a bond hearing.

2.      Mr. Celestin is a 25-year old citizen of Haiti with no criminal history.  He has never attempted to evade the immigration authorities.  To the contrary, Mr. Celestin voluntarily surrendered to U.S. immigration authorities at the U.S.-Mexican border at San Ysidro, California immediately upon arrival to the United States.  Mr. Celestin was subsequently interviewed by an Asylum Officer who concluded that Mr. Celestin had a credible fear of torture if he were returned to Haiti because masked men claiming to be the police abducted and beat him to the point of unconsciousness and murdered his brother, with whom he was abducted, in order to steal their family's land.  On that basis, instead of being subjected to expedited removal, Mr. Celestin was detained pending removal proceedings, during which an Immigration Judge will adjudicate Mr. Celestin's application for asylum and withholding of removal.  *See* 8 U.S.C. § 1225(b)(1)(B)(ii).  On March 27, 2017, Mr. Celestin filed a request for release on humanitarian parole to Respondents Decker and McConnell.  As of today, that request is still pending.

3.      Although Mr. Celestin was initially detained as an "arriving alien" pursuant to 8 U.S.C. § 1225(b), his detention is properly governed by 8 U.S.C. § 1226(a), which authorizes his release on bond, because he passed a credible fear interview.  However, even if this Court were to conclude that Mr. Celestin is still detained as an arriving alien pursuant to 8 U.S.C. § 1225(b), it must construe the mandatory provision of that statute as expiring after a period of six months.  Such a reading of the statute is required because any other construction, by which Mr. Celestin's current detention could continue indefinitely, would violate his right to due process.  This conclusion necessarily follows from the Second Circuit's decision in *Lora v.*

*Shanahan*, which held that "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to § 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." 804 F.3d 601, 616 (2d Cir. 2015). Although the Second Circuit's holding did not explicitly extend to immigrants held pursuant to § 1225(b), the court's reasoning is fully applicable to Mr. Celestin. The Second Circuit in *Lora* adopted the reasoning of the Ninth Circuit in *Rodriguez v. Robbins*, which explicitly held that mandatory detention under § 1225(b) must be construed to expire after six months in order for the statute to be constitutional. *Lora*, 804 F.3d at 616 (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1131 (9th Cir. 2013)).

4.      Petitioner seeks a Writ of Habeas Corpus ordering his release or that he promptly be provided with an individualized bond hearing before an Immigration Judge where the government bears the burden of justifying his continued detention. *See Lora*, 804 F.3d at 616.

## STATUTORY TEXT

5.      Section 1225(b)(1)(B)(ii) of title 8 of the United States Code provides:

> Referral of certain aliens—If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

6.      Section 1225(b)(2) of title 8 of the United States Code provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Subparagraphs (B) and (C) provide for limited exceptions not applicable here.

7.      Section 1226(a)(2) of title 8 of the United States Code provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the

3

Attorney General—(2) may  release the alien on—(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole.

8.      Section 1182(d)(5)(A) of title 8 of the United States Code provides:

The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

## **PARTIES**

9.      Petitioner Renaldo Celestin, a citizen of Haiti, presented himself to the U.S. Customs and Border Patrol near San Ysidro, California on October 26, 2016 seeking asylum.  He was detained by the Department of Homeland Security and placed into removal proceedings at the Varick Street Immigration Court in New York, New York.  Pending these proceedings, Petitioner is detained at the direction of Respondents at Hudson County Correctional Facility in Kearny, New Jersey and at the Varick Street Detention Center in New York, New York.

10.     Respondent Thomas Decker is named in his official capacity as the Director of the New York Field Office for Immigration and Customs Enforcement within the United States Department of Homeland Security.  In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations, and he supervises Respondent Diane McConnell.  As such, he is the legal custodian of Petitioner.  Respondent Decker's office is located at 26 Federal Plaza, New York, New York 10278.

4

11.     Respondent Diane McConnell is named in her official capacity as the Assistant Director of the New York Field Office for Immigration and Customs Enforcement within the United States Department of Homeland Security.  Her office is located at 26 Federal Plaza, New York, New York 10278.  In this capacity, she is the legal custodian of Petitioner.

12.     Respondent U.S. Department of Homeland Security ("DHS") is a cabinet department of the federal government with the primary mission of securing the United States.

13.     Respondent John F. Kelly is named in his official capacity as the Secretary of DHS.  In this capacity, he is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a); he routinely transacts business in the Southern District of New York; he supervises Respondent Decker; and he is legally responsible for the pursuit of Petitioner's detention and removal.  As such, he is the legal custodian of Petitioner.  Respondent Kelly's office is located in the United States Department of Homeland Security, Washington, District of Columbia 20528.

14.     Respondent Jefferson Beauregard Sessions III is named in his official capacity as the Attorney General of the United States.  In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to 8 U.S.C. § 1103(g).  He routinely transacts business in the Southern District of New York and is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings.  As such, he is the legal custodian of Petitioner.  Respondent Sessions's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

15.     Respondent Eric Taylor is named in his official capacity as the Director of the Hudson County Correctional Facility.  In this capacity, he is the legal custodian of Petitioner.

Respondent Taylor's office is located at Hudson County Correctional Facility, 30-35 Hackensack Avenue, Kearny, New Jersey 07032.

## JURISDICTION

16.    Petitioner is currently detained in the custody of Respondents.  Petitioner is detained pending removal proceedings at Hudson County Correctional Facility at 30-35 Hackensack Avenue, Kearny, New Jersey 07032 and at the Varick Immigration Court at 201 Varick Street, New York, New York, 10014.

17.    This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. §§ 1131 and  2241, and Article I, § 9, cl. 2 of the United States Constitution; the All Writs Act, 28 U.S.C. § 1651; and the Administrative Procedure Act, 5 U.S.C. § 701.  Additionally, the Court has jurisdiction to grant injunctive relief in this case pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  Petitioner's current detention as enforced by Respondents constitutes a "severe restraint[]" on [Petitioner's] individual liberty," such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." *See Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241(c)(3).

18.     While only the federal courts of appeals have jurisdiction to review removal orders directly through petitions for review, *see* 8 U.S.C. § 1252(a)(1), (b), the federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness or constitutionality of their detention by ICE.  *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

19.    No exhaustion requirement applies to the constitutional claims raised in this Petition because the Immigration Court and Board of Immigration Appeals lack jurisdiction to entertain

constitutional challenges.  *See Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995); *Arango-Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir. 1994); *Matter of Desai*, A037 061 888, 2008 WL 4420039, at *1 (BIA Sept. 16, 2008) (per curiam) (citing *Matter of Valdovinos*, 18 I & N Dec. 343, 345 (BIA 1982)) (disclaiming authority to rule on constitutionality of 8 U.S.C. § 1226(c)).

20.     Regarding Petitioner's statutory claims, neither 8 U.S.C. § 1226(a) nor § 1225(b) contains an exhaustion requirement with respect to challenges to detention.  *See Louisaire v. Muller,* 758 F. Supp. 2d 229, 234 (S.D.N.Y. 2010); *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009).  Moreover, it is well established that where the agency has predetermined a dispositive issue, no further action with the agency is necessary.  *See, e.g.*, *Monestime v. Reilly*, 704 F. Supp. 2d 453, 456-57 (S.D.N.Y. 2010) (holding that administrative challenges to a noncitizen's classification under the mandatory detention statute would be futile given the agency's precedent on the issue); *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009) (same).  Because the Executive Office for Immigration Review is bound by Board of Immigration Appeals precedent to find that Mr. Celestin is subject to mandatory detention, no further administrative remedies are required.

21.     Even assuming *arguendo* that a judicial exhaustion requirement applies to this Petition, which it does not, Petitioner has satisfied the requirement.  After being detained at Hudson County Correctional Facility, Petitioner sought release on humanitarian parole from Respondents Decker and McConnell.  *See, e.g.*, *Questel v. Green*, No. 16-1637 (MLC), 2016 WL 4744140, at *4 (D.N.J. Sept. 12, 2016) ("To exhaust his available remedies, an alien detained pursuant to § 1225(b)(2)(A) must seek parole under § 1182(d)(5)(A) by requesting such relief from the Government.").  That request is still pending.

## VENUE

22.     Pursuant to 28 U.S.C. § 2241(d), venue properly lies in the Southern District of New York.  Petitioner's pending removal proceedings are taking place within the district at the Immigration Court located at 201 Varick Street, New York, New York 10014 and the petition is being filed on April 4, 2017, when Petitioner is physically present within the district to attend a hearing in his removal proceedings.  The place of employment of Respondents Decker and McConnell is located within the district, at 26 Federal Plaza, New York, New York.

## STATEMENT OF FACTS

### A.  Mr. Celestin's Background, Arrival in the United States and Credible Fear Interview

23.     Mr. Celestin is a 25-year-old citizen of Haiti.  He has no criminal record.  Mr. Celestin presented himself at the U.S.-Mexico border at San Ysidro, California seeking asylum on October 26, 2016.  *See* Record of Determination/Credible Fear Worksheet at 1 (Ex. A); Notice to Appear at 1 (Ex. B).  He has been in Respondents' continuous custody since that time.

24.     Mr. Celestin arrived at the U.S.-Mexico border on October 26, 2016 and voluntarily surrendered to immigration authorities in San Ysidro, California.[1]  *See* Notice to Appear at 1 (Ex. B).  He was interviewed by an Asylum Officer on December 13, 2016 who found Mr. Celestin to have a credible fear of torture.  *See* Record of Determination/Credible Fear Worksheet at 4 (Ex. A).

25.     While Mr. Celestin lived in Gonaïves, Haiti, he and his brother were abducted by masked men claiming to be the police. *See* Record of Determination/Credible Fear Worksheet at 8 (Ex.

---

[1]     Mr. Celestin entered the United States at the U.S.-Mexico border at San Ysidro, California on October 26, 2016.  *See* Record of Determination/Credible Fear Worksheet at 1 (Ex. A).  Federal immigration authorities promptly detained Mr. Celestin, and have continued this detention for over five months.

A).  Mr. Celestin was beaten to the point of unconsciousness, and his brother, with whom he was abducted, was murdered.  *Id.* Mr. Celestin was found by his parents in the woods near his dead brother.  *Id.*

26.     Mr. Celestin explains that the group of men attacked him and his brother in order to steal their family's land.  *Id.* at 8-9. Mr. Celestin and his brother were responsible for working the land and protecting it after their father became disabled.  *Id.*  The group posed as police officers in order to intimidate them and prevent them from seeking help from the police.  *Id.*

27.     Mr. Celestin's parents reported the attack and their fears of future violence to the police, but the police refused to offer assistance.  *Id.* at 10.

28.     After this incident, Mr. Celestin learned that the men had returned to his parent's home to look for him.  *Id.*  Certain he would be killed if he remained in Haiti, he fled to the Dominican Republic and then on to Brazil.  *Id.* at 6, 9.

29.     In Brazil, Mr. Celestin faced discrimination based on his race and nationality and was unable to find work.  *Id.* at 8. His landlord evicted him because of his race. He finally left Brazil because he witnessed widespread violence against Haitians and feared he could be killed because he is Haitian.  *Id.*

30.     Mr. Celestin is afraid that if he ever returned to Haiti, he would be killed.  *Id.* at 10. He is also afraid to return to Brazil.

31.     The Credible Fear Worksheet established that the Asylum Officer believed Mr. Celestin to be testifying credibly regarding his fear of harm and the factual basis therefor.  *Id.*  Had the Asylum Officer not made that determination, Mr. Celestin would be subject to expedited removal without further review by the immigration courts.  *See* 8 U.S.C. § 1225(b)(1)(B)(iii).

However, the determination that he had a credible fear of torture meant that he could remain in the United States while his asylum proceedings were pending. *See* 8 U.S.C.§ 1225(b)(1)(B)(ii).

### B. Mr. Celestin's Continued Detention Since October 26, 2016

32.    Mr. Celestin has never been released from custody since he voluntarily surrendered to immigration authorities on October 26, 2016. *See* Record of Determination/Credible Fear Worksheet at 1 (Ex. A). He has been detained for over five months without an individualized bond determination.

33.    On March 27, 2017, Mr. Celestin filed a request for parole under 8 U.S.C. § 1182(d)(5)(a) with the Office of Enforcement and Removal Operations, which is overseen by Respondents Decker and McConnell. The parole request contained notarized affidavits from two of Mr. Celestin's cousins, both of whom have lawful status in the United States. These cousins attested to Mr. Celestin's identity and nonviolent character, and stated that if released Mr. Celestin would reside at 512 South 6th Street, Fort Pierce, FL 34950. His cousin Cemoy Celestin provided proof of that address including his driver's license and utility bill. The parole request also contained a copy of Mr. Celestin's passport. These affidavits, proof of identity, and proof of address demonstrate that there is no reason for Mr. Celestin's continued detention without an individualized bond determination as he poses neither a danger to the community nor a flight risk. Mr. Celestin's parole request is currently still pending.

34.    Mr. Celestin attended a master calendar hearing in Immigration Court on April 4, 2017. He requested a merits hearing, which the Immigration Judge calendared for June 16, 2017.

35.    By the time of his merits hearing, Mr. Celestin will have been detained for over seven months without an individualized bond determination.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT—
### MR. CELESTIN'S DETENTION IS PROPERLY GOVERNED BY 8 U.S.C. § 1226(a),
### UNDER WHICH HE IS ENTITLED TO AN IMMEDIATE BOND HEARING

36.    Petitioner repeats and realleges the allegations of paragraphs 1 through 35 of this Petition as fully set forth herein.

37.    Mr. Celestin's detention is properly governed by 8 U.S.C. § 1226(a), a discretionary detention statute, and he is therefore entitled to an individualized bond determination hearing immediately.  Mr. Celestin is not properly subject to mandatory detention under 8 U.S.C. § 1225(b), as Respondents contend, because he has passed a credible fear interview and commenced removal proceedings.

38.    The statute governing detention of arriving aliens, 8 U.S.C. § 1225(b), does not authorize detention of individuals who have commenced removal proceedings.  Rather, this statute governs the detention of noncitizens between their time of apprehension at the border—when they could be subjected to expedited removal without further hearing—and the commencement of removal proceedings before an Immigration Judge in Immigration Court.  This is made clear by the contrasting statutory provisions governing custody for those who do and do not pass credible fear interviews.  For aliens like Mr. Celestin, found to have a credible fear of persecution, the statute directs that "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).  By contrast, individuals who are interviewed and found to have *no* fear of persecution "shall be detained *pending* a final determination of credible fear of persecution *and, if found not to have such a fear, until removed*."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (emphasis added).

11

39.    A comparison of the language of these two provisions reveals Congress's intent to make detention mandatory up until removal in the case of noncitizens who do not have a credible fear of persecution, and only until the commencement of proceedings before a judge, which constitutes "further consideration of the application," for those who do.  *See also* 8 U.S.C. § 1225(b)(2)(A).  As explained by the Supreme Court, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nken v. Holder*, 556 U.S. 418, 430 (2009); *see also Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) ("It is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not govern the same limitation…. If one of them would raise a multitude of constitutional problems, the other should prevail – whether or not those constitutional problems pertain to the particular litigant before the court").

40.    Petitioner's interpretation of the statute is confirmed by the fact that detention authority undisputedly shifts to § 1226(a) for individuals who have entered without inspection—rather than presenting themselves at a point of entry, as Mr. Celestin did—and passed a credible fear interview.  Noncitizens encountered in the United States after entering without inspection are initially held without bond pursuant to § 1225(b)(1)(B)(ii).  Under Respondents' current nationwide practice, the authority for the detention of these individuals shifts to § 1226(a)—a discretionary detention statute—once they pass a credible fear interview, entitling them to a bond hearing.  *See In Re X-K-*, 23 I. & N. Dec. 731, 736 (BIA 2005). Yet there is no basis in the statute for distinguishing those individuals from Mr. Celestin, who presented himself to border officials seeking asylum.  Indeed, to treat Mr. Celestin's detention as mandatory and the

detention of a noncitizen who entered without inspection as discretionary, where both have

passed credible fear interviews, would not only be counter to the text of the statute, it would

subvert border security by *incentivizing* individuals to enter the United States unlawfully, rather

than presenting themselves at a port of entry and declaring an intent to seek asylum as Mr.

Celestin did.

41.    Because his detention is properly governed by 8 U.S.C. § 1226(a), a discretionary

detention statute, Mr. Celestin is entitled to an immediate bond hearing.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT—**
**8 U.S.C. § 1225(b) DOES NOT AUTHORIZE PROLONGED DETENTION BEYOND A**
**BRIEF AND REASONABLE PERIOD**

42.    Petitioner repeats and realleges the allegations of paragraphs 1 through 41 of this Petition

as fully set forth herein.

43.    The statute under which Respondents purport to detain Mr. Celestin, 8 U.S.C.

§ 1225(b)(2)(A), does not authorize indefinite detention without a bond hearing.  As the Second

Circuit has held, "It is well-settled that the Fifth Amendment entitles aliens to due process in

deportation proceedings."  *Lora v. Shanahan*, 804 F.3d 601, 613 (2d Cir. 2015).  This includes

excludable and inadmissible aliens.  *Zadvydas*, 533 U.S. at 693; *see also Xi v. United States*

*I.N.S.*, 298 F.3d 832, 836 (9th Cir. 2002); *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 396 (3d Cir.

1999), *amended* (Dec. 30, 1999); *Rosales-Garcia v. Holland*, 322 F.3d 386, 410 (6th Cir. 2003)

(*en banc*) ("If excludable aliens were not protected by even the substantive component of

constitutional due process, as the government appears to argue, we do not see why the United

States government could not torture or summarily execute them").  The due process limitation on

detention without bond set forth in *Lora v. Shanahan* for noncitizens held pursuant to 8. U.S.C. §

1226(c) is therefore equally applicable to noncitizens like Mr. Celestin, held under §

1225(b)(2)(A), and the statute must be construed to authorize detention no longer than six months without an individualized bond determination. *See, e.g.*, *Rodriguez v. Robbins*, 715 F. 3d 1127, 1144 (9th Cir. 2013); *Ricketts v. Simonse*, No. 16 CIV. 6662 (LGS), 2016 WL 7335675, at *4 (S.D.N.Y. Dec. 16, 2016); *Arias v. Aviles*, No. 15-CV-9249 (RA), 2016 WL 3906738, at *10 (S.D.N.Y. July 14, 2016); *Saleem v. Shanahan*, No. 16-CV-808 (RA), 2016 WL 4435246, at *5 (S.D.N.Y. Aug. 22, 2016); *Ahad v. Lowe*, No. 1:16-CV-01864, 2017 WL 66829, at *2 (M.D. Pa. Jan. 6, 2017); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 379-381 (M.D. Pa. 2012); *Alaka v. Elwood*, 225 F. Supp. 2d 547, 559 (E.D. Pa. 2002); *Maldonado v. Macias*, 150 F. Supp. 3d 788 (W.D. Tex. 2015).

44.     In *Lora*, the Second Circuit held that in order to be constitutional, the statute at issue in that case authorizing mandatory detention, 8 U.S.C. § 1226(c), must be construed as limiting that detention to no more than six months.  804 F.3d at 615-16 (a "bright-line" approach limiting detention to six months "affords more certainty and predictability," "avoids the random outcomes resulting from individual habeas litigation" where some detainees are represented by counsel and some are not and helps to mitigate the "real-life consequences for immigrants and their families" of indefinite detention).  At the expiration of that period of mandatory detention, the noncitizen is entitled to an individualized bond determination before an Immigration Judge, at which the government bears the burden of proving by clear and convincing evidence that the noncitizen poses a flight risk or a danger to the community.  *Id.* at 613.  As the *Lora* court noted, every federal circuit to have considered the issue has agreed.  *Id.* at 614; *see Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011) ("when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute");

*Rodriguez*, 715 F.3d at 1138; *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003); *see also Reid v. Donelan*, 991 F. Supp. 2d 275, 279 (D. Mass. 2014); *Uritsky v. Ridge*, 286 F. Supp. 2d 842, 846-47 (E.D. Mich. 2003).

45.    The only federal circuit to have addressed the constitutionality of mandatory detention under § 1225(b) has held that, like detention under § 1226(c), the government's mandate to detain individuals without bond must be construed as "implicitly time-limited" in order to comport with due process.  *Rodriguez*, 715 F. 3d at 1144.  In *Rodriguez*, which was relied upon heavily by the Second Circuit in *Lora*, the Ninth Circuit held that in order for the statute to comply with due process, "the mandatory provisions of § 1225(b) simply expire at six months, at which point the government's authority to detain the alien would shift to § 1226(a), which is discretionary and which we have already held requires a bond hearing."  *Id.* (citing *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 948 (9th Cir. 2008)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) (holding that 8 U.S.C. § 1225(b)(2)(A) does not authorize indefinite detention).

46.    Several district courts have agreed with the Ninth Circuit that "for the purposes of analyzing indefinite detention" there is "no effective difference" between § 1225(b)(2) and § 1226(c).  *Bautista*, 862 F. Supp. 2d at 380 n.5; *see also Ricketts*, No. 16 CIV. 2016 WL 7335675 at *4, *Arias*, 2016 WL 3906738 at *10; *Saleem*, 2016 WL 4435246 at *5; *Alaka*, 225 F. Supp. 2d at 559; *Ahad*, No. 2017 WL 66829 at *2; *Maldonado*, 150 F. Supp. 3d at 799-800.

47.    The issue of whether noncitizens are entitled to a bond hearing within six months of his or her detention is currently under review by the Supreme Court in the pending case of *Jennings v. Rodriguez*, Case No. 15-1204.  Holding this action in abeyance pending a decision in *Jennings*

is not appropriate given Mr. Celestin's substantial liberty interest at stake and that the government will suffer no prejudice from proceeding with this action.

48.     Because the constitutional limitations set forth in *Lora* for detention under § 1226(c) apply with equal force to detention under § 1225(b), the statute must be construed to contain an equivalent limitation.  Because Mr. Celestin will be detained for over the six months deemed permissible in *Lora*, he is entitled to an immediate individualized hearing at which the government bears the burden of showing that his detention is reasonable and justified.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT—**
**8 U.S.C. § 1225(b) AS APPLIED TO MR. CELESTIN**
**VIOLATES HIS RIGHT TO DUE PROCESS**

49.     Petitioner repeats and realleges the allegations of paragraphs 1 through 47 of this Petition as fully set forth herein.

50.     Indefinite mandatory detention under 8 U.S.C. § 1225(b) is unconstitutional as applied to Mr. Celestin because, like the plaintiff in *Lora*, "it is certain that… his total period of detention" will exceed six months and because the cursory discretionary review process afforded by Respondents does not vindicate his right to due process.  *Lora*, 804 F.3d at 606 n.11.

51.     If prolonged detention under 8 U.S.C. § 1226(c) without a bond hearing violates a detainee's right to due process, *see id.* at 606, so too does prolonged detention under 8 U.S.C. § 1225(b) without a bond hearing.  *Rodriguez*, 715 F.3d at 1142-44.  Mr. Celestin has been detained at present for over five months.  His next appearance in Immigration Court will take place on June 16, 2017, at which point he will have been detained for over seven months. Because it is almost certain that even on June 16, 2017 his removal case will not conclude, his period of detention is likely to extend far beyond seven months. *Cf. Lora*, 804 F.3d at 606

(finding that Mr. Lora's period of detention would inevitably be longer than six months and granting petition when he had only been detained for 5.5 months).

52.    Moreover, the discretionary detention review which individuals detained under § 1225(b) may seek pursuant to 8 U.S.C. § 1182(d)(5)(A) does not meet the requirements of due process. *See Rodriguez*, 715 F.3d at 1144 ("the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention" because it is "purely discretionary and its results are unreviewable by IJs," and determinations are not based on whether the alien poses a flight or risk or a danger to the community) (citations omitted).

53.    Under 8 U.S.C. § 1182(d)(5)(A), the Attorney General may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C.A. § 1182(d)(5)(A); *see also* 8 C.F.R. 212.5(b) (further restricting parole to limited categories including juveniles, pregnant women and witnesses in criminal cases). However, the parole statute—which does not require any showing that the detainee is either a flight risk or a danger—falls far short of the due process required for noncitizens subjected to mandatory detention. *Lora*, 804 F.3d at 616 (requiring a bond hearing before an immigration judge at which "the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community"); *see also Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that the government "must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" given "the substantial liberty interest at stake"); *Leslie v. Att'y Gen. of U.S.*, 678 F.3d 265, 267 n.2 (3d Cir. 2012)

(rejecting as a procedurally inadequate bond hearing a "post order custody review" conducted by DHS, at which neither the detainee nor counsel was present and no hearing was held); *Diop*, 656 F.3d at 231 (§ 1226(c) only authorizes detention for "a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community"); *Boumediene v. Bush*, 553 U.S. 723, 792 (2008) (rejecting an internal government review process as a constitutionally inadequate substitute for habeas corpus).

54.     Indeed, in *Lora*, the Second Circuit was careful to allocate the burden in a constitutionally adequate bond proceeding to the government, and to hold that if the government fails to meet its burden to show that the detainee is a flight risk or danger to the community then the detainee "*must* be admitted to bail." 804 F.3d at 616 (emphasis added). An internal custody review, of the sort afforded to Mr. Celestin, is not held before a neutral Immigration Judge; the detainee and his or her attorney are not present; no hearing is held; and no explanation need be offered for denial. This wholly discretionary, unreviewable procedure does not satisfy the requirements of due process. *Rodriguez*, 715 F.3d at 1144.

55.     Moreover, the unreviewable parole procedure does not hew to the purpose of the detention statute. The purposes of civil immigration detention are to ensure the appearance of noncitizens at future hearings and to mitigate danger to the community pending the completion of removal. *See Demore v. Kim*, 538 U.S. at 532-33 (Kennedy, J., concurring); *Zadvydas v. Davis*, 533 U.S. at 690-91. Yet the requirements of 8 U.S.C.A. § 1182(d)(5)(A) are far more stringent.

56.     Mr. Celestin's case illustrates the inadequacy of the parole procedure. The ample documentation of his identity and address, if released, show he is neither a flight risk or a danger. Yet he remains detained without any right to an individualized determination as to whether his detention serves any purpose.

57.     For the reasons set forth above, Mr. Celestin's continued detention under 8 U.S.C. § 1225(b) without a bond hearing violates his right to due process. However, the Court may avoid reaching this constitutional issue by construing § 1225(b) to contain an implicit reasonableness limitation, as the Second Circuit has done with respect to 8 U.S.C. § 1226(c). *Lora,* 804 F.3d at 616.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately on his own recognizance or under parole, bond, or reasonable conditions of supervision, or, in the alternative, ordering Respondents to provide Petitioner with a constitutionally adequate, individualized hearing before an Immigration Judge at which Respondents bear the burden of establishing that his continued detention is justified on the basis of either flight risk or a prospective danger to the community;

3) Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

4) Grant such further relief as the Court deems just and proper.

Dated: New York, New York
      April 4, 2017

                                Respectfully submitted,

                                CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                By: _____
                                    Jonathan S. Kolodner
                                    I. Deborah Francois
                                    Seguin L. Strohmeier
                                    Cleary Gottlieb Steen & Hamilton
                                    New York, New York  10006
                                    T: 212-225-2000
                                    F: 212-225-3999


                                By:   Paige Austin
                                      The Bronx Defenders
                                      360 East 161st Street
                                      Bronx, New York 10451
                                      T: 716-838-7878
                                      F: 716-665-0100

                                *Attorneys for Petitioner Renaldo Celestin*

21